## Cillo v. Ohio Casualty Insurance Co.

*Peter Campana*, for plaintiff.
*C. Edward S. Mitchell*, for defendant.

GREEVY, *J.*, April 24, 1981—The parties in this case have agreed to a decision based upon the trial briefs and oral arguments presented to this court on April 16, 1981. The sole issue presented is a legal one: Whether plaintiff, as parent of the deceased and administratrix of his estate, can recover work-loss benefits under the No-fault Insurance Act (act), 40 P.S. § 1009.101 et seq., even though plaintiff is not a "survivor" under the definition provided by the act. This exact issue was presented to this court in Midgett v. Pennsylvania General Insurance Co., with this court holding that the act "as interpreted by the Pennsylvania Superior Court, provides work-loss benefits to a deceased victim's estate." 15 Lycoming 1, 2 (1979). In light of the Pennsylvania Supreme Court's recent review of the relevant Superior Court case, see Allstate Insurance Co. v. Heffner, 491 Pa. 447, 421 A. 2d 629 (1980), re-examination of the ruling in Midgett is appropriate.

## DISCUSSION

The parties have agreed to have the court render a decision on a "case stated" basis. For the purposes of this decision, the parties have stipulated to the facts of this case as follows:

"1. The deceased, Gino J. Cillo, was fifteen (15) years old at the time of his death on March 3, 1979.

2. At the time of his death, the deceased was a student in the tenth (10th) grade at Loyalsock High School.

3. The deceased was not married and had no children.

4. The deceased had no parents, brothers or sisters, or other relatives dependent on him for their support at the time of his death.

5. The deceased died on March 3, 1979 as a result of an automobile accident on Four Mile Drive, Loyalsock Township, Lycoming County, Pa.

6. Defendant, Ohio Casualty Insurance Company, insured the deceased's mother, Sandra J. Cillo, under policy No. AU 79 10 95 93 C for purposes of the Pennsylvania No-fault Motor Vehicle Insurance Act.

7. At the time of his death, the deceased was not gainfully employed and had never been gainfully employed."

Defendant has adopted as its trial brief an extensive and cogent brief it filed in support of a motion for summary judgment, which urges the reversal of Midgett. Plaintiff, on the other hand, rests upon the Midgett decision as the basis for her claim. At the outset, it is noted that the No-fault Act is susceptible of no easy interpretation—it is hoped that the judicial "compass" is accurate, and that the "knowledge of reefs and storms" and food supply is

adequate: Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 401 A. 2d 1160 (1979).

In support of its contention that only "survivors" as defined by the act are entitled to work-loss benefits when the victim of an automobile accident dies, defendant points to the purpose clause of the act, which provides for a compensation system "for motor vehicle accident victims and survivors of deceased victims." 40 P.S. § 1009.102(b). Similar language is used in many places throughout the act. See, e.g. 40 P.S. § 1009.102(4), 1110.201. There is no question that plaintiff is not a "survivor," and is therefore not entitled to survivor's benefits under the act. The issue is whether the estate of plaintiff can qualify for work-loss benefits, either as a "survivor" or as a "victim." The Heffner opinions are not directly on point, since there the right of an acknowledged "survivor" to recover both survivor's and work-loss benefits was decided. However, Heffner does lend insight to the situation presented in this case. In deciding that the act does not create a definitional dichotomy that would treat "victims" differently than "deceased victims," the Superior Court stated:

"In addition, although Allstate directed our attention to the definitional dichotomy of 'victim-deceased victim' which the Act creates, it has overlooked the impact of the Act's definition of 'injury.' Section 103 provides: " 'Injury' means accidentally sustained bodily harm to an individual and that individual's illness, disease, or *death* resulting therefrom." (Emphasis added). Because the Act specifically defines the term 'injury', for the purposes of construing the Act, "injury' is a term of art to which we should ascribe precisely the meaning the Act gives it. As one might expect when he analyzes the No-Fault Act, this intepretational

truism creates another paradox, a nettlesome impediment for All-state's position. True, the Act has differentiated victims from deceased victims, but it has not differentiated injuries from fatal injuries. The result is that some sections of the Act which Allstate insists apply only to non-fatal injuries are not so limited by their terms. For example, Section 103 of the Act defines 'loss' as the 'accrued economic detriment resulting from *injury . . . consisting of*, and limited to, allowable expense, *work loss*, replacement services loss, and survivor's *loss.*" (Emphasis added). Since injury means death, as well as non-fatal injury, Section 103 can be read to mean that work loss is an accrued economic detriment resulting from death. This implication is fortified by Section 206 of the Act which in attempting to define 'net loss,' provides that life insurance proceeds are not to be subtracted from loss in calculating the net loss available to an individual because of injury. Certainly, if the legislature intended to establish benefits for two different classes of individuals, 'victims' and 'deceased' victims it did not do so in very lucid fashion: 265 Pa. Super. at 186-188, 401 A. 2d at 1162-63 (footnotes omitted, emphasis in original). Allstate Ins. Co. v. Heffner, 491 Pa. at 454-5, 421 A. 2d at 633-4 (1980). (Emphasis supplied.)

The same definitional vagaries that created ambiguities in Heffner are present in the issue now presented. A "victim" is defined as one who suffers injury; "injury" is defined to include bodily harm resulting in death. Similarly, "work-loss" is a 'loss' of gross income of the 'victim' "; and "injury" may result in death. Thus, a "deceased victim" may be treated as a sub-category of 'victim", and the two terms are often used interchangeably. D. Schrager, ed., The Pennsylvania No-fault Motor Vehicle In-

surance Act, 109 (1979); Allstate Ins. Co. v. Heffner, 491 Pa. at 456-7, 421 A. 2d at 634 (1980). Furthermore, it is reasonable to conclude that a "victim" who dies may recover for his injuries through his estate, since the definition of "injury" includes the victim's resultant death.

Defendant's interpretation of the purpose clause of the act is not unreasonable; however, plaintiff's interpretation that the estate of a victim who had died should not be excluded from recovering work-loss benefits is also not unreasonable. When the court is presented with such a quandary, the No-fault Act "should be construed liberally in favor of the insured." Allstate Inc. Co. v. Heffner, 491 Pa. at 458, 421 A. 2d at 635, (1980), Heffner v. Allstate Ins. Co., 265 Pa. Super., at 188, 401 A. 2d at 1163, (1979). Therefore, this court's decision in Midgett should be upheld, and plaintiff is entitled to recover work-loss benefits under the act. Plaintiff is also entitled to recover interest at 18 percent per annum computed from September 23, 1979, which is 30 days from when plaintiff demanded payment: Hayes v. Erie Ins. Exchange, 493 Pa. 150, 425 A. 2d 419 (1981); 40 P.S. § 1009-106(a)(2). Since there is no showing of bad faith on the part of the insurance company, plaintiff is not entitled to attorney's fees: Id. 40 P.S. § 1009.107.

## ORDER

And now, April 24, 1981, it is hereby ordered and directed that judgment be entered in favor of plaintiff in the amount of $15,000, plus 18 percent per annum interest computed from September 23, 1979. Exceptions must be filed within ten days of the date of this order. If none have been filed by that time, the prothonotary shall enter final judgment on this decision.