## Pisano v. State Farm Mutual Automobile Insurance Co.

*David R. Cashman*, for plaintiff.
*Charles J. Duffy, Jr.*, for defendant.

FINKELHOR, *J.*, March 31, 1982—This action, in assumpsit, comes before the court, en banc, on the motion of plaintiff Irene Pisano, executrix of the Estate of Vincent Pisano, deceased, for summary judgment on her claim for work-loss benefits, interest and attorney's fees under the Pennsylvania No-fault Act, 40 P.S. Supp. 1009.101, against defendant State Farm Mutual Automobile Insurance Company. The major issue in dispute is whether the decision of the Pennsylvania Supreme Court in Heffner v. Allstate Ins. Co., 491 Pa. 447, 421 A. 2d 629 (1980), granting work-loss benefits to the sur-

vivors of a deceased victim under Section 202 of the No-fault Act is retroactive or prospective.[1]

On February 29, 1979, Vincent Pisano, plaintiff's husband, was killed in a two-car accident on Route 65 in Rochester Township, Beaver County, Pa. Decedent was insured under an automobile liability policy issued by defendant State Farm and covered No-fault benefits, including wage loss claims in the maximum amount of $15,000. Irene Pisano was appointed executrix of Vincent Pisano's Estate on April 23, 1979, by the Register of Wills of Beaver County.

On March 19, 1979, Irene Pisano applied for No-fault benefits on a form provided by defendant insurance carrier[2] and included authorizations for medical and wage information. On or about April 2, 1979, defendant received wage verification from the Commonwealth of Pennsylvania, decedent's employer, that he was employed as a field accountant from 1950 to the date of his death and received a biweekly wage of $785.25. (Plaintiff's Deposition Exhibit #5) Defendant was also supplied with a death certificate and information on outside employment.

On or about March 26, 1979, defendant paid to Irene Pisano funeral expenses in the amount of $1,500 and, on or about April 11, 1979, $75 for

1. To the knowledge of the court, this issue has been raised and considered in two prior Allegheny County decisions: Parrish v. Ins. Co. of North America, No. GD 80-13583, Opinion, Finkelhor, J. filed Jan. 20, 1982; Harkins v. State Farm Mutual Ins. Co., No. GD 79-21326 Opinion, Wekselman, J., filed Nov. 10, 1981. See also Boher v. Aetna, No. 876 of 1980, C. P. of Beaver County, Walko J., Opinion filed June 18, 1981.

2. Plaintiff's Deposition Exhibit #4. The application was filed by "Irene Pisano for Vincent C. Pisano." The application does not list the benefits claimed.

medical expenses and $5,000 for survivor's loss. No payment was made for wage loss nor was this claim specifically denied.

At an uncertain date, plaintiff retained counsel to secure the wage loss claim and counsel was informed by defendant that action on said benefit was deferred pending the decision by the Pennsylvania Supreme Court in Heffner v. Allstate Ins. Co.,[3] on the eligibility of the survivors of a deceased victim to recover wage loss benefits.

In her motion for summary judgment, plaintiff alleges that, on October 1, 1980 (after the Supreme Court decision in Heffner, supra), a demand was made for wage loss benefits in the amount of $15,000. When said demand was not paid, suit was filed December 5, 1980, for wage loss, and interest "from and after October 1, 1980 at 18 percent per annum together with reasonable attorney fees and expenses." The instant motion for summary judgment was filed January 27, 1982, and submitted on briefs.

It is well established that summary judgment will be granted only in the clearest of cases: Hankin v. Mintz, 419 A. 2d 588, 276 Pa. Superior Ct. 538 419 A. 2d 588, (1980). The pleadings, depositions, answers to interrogatories and admissions, together with affidavits, must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law: Pa.R.C.P. § 1035; Bollinger v. Palmerton Area Communities Endeavor, Inc., 241 Pa. Superior Ct.

---

3. Heffner v. Allstate Ins. Co., originated in Philadelphia County (No. 3406 November term 1976) and denied work loss benefits to a deceased victim. The Superior Court reversed and granted said benefits; 265 Pa. Superior Ct. 181, 401 A. 2d 1160 (1979) and the Supreme Court affirmed, 491 Pa. 447, 421 A. 2d 629 (1980).

341, 361 A. 2d 676 (1976); Goodrich-Amram, 2d § 1035.1.

It is plaintiff's position that (1) Heffner is retroactive; (2) reasonable proof of loss was submitted to support the wage claim and payment is therefore overdue; (3) plaintiff is entitled to both interest and attorney's fees; and (4) there are no disputed issues of fact.

It is defendant's position that (1) reasonable proof of loss has not been submitted; (2) Heffner does not apply retroactively to deaths that pre-date the Superior Court decision (April 12, 1979), or the Supreme Court decision (September 1980); (3) because the denial of work-loss benefits was reasonable, plaintiff is not entitled to attorney's fees; and (4) a set off is required against work-loss benefits for the amount paid as survivor's loss to plaintiff.

## The Effect of the Heffner Decision

There is no dispute that the two appellate decision in Heffner, supra, ruled that survivors of a deceased victim have a claim for wage loss benefits under Section 202 of the No-fault Act.

Work loss is defined in § 103 of the Act as "loss of gross income of a victim, as calculated pursuant to the provisions of § 205."

Section 205 provides:

"(a) Regularly employed.—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

"(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

"(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period."

The recovery is analogous to the survival action recovery of loss of earning power from the date of death, but without deduction for personal maintenance.

Defendant contends that the Heffner decision is not retroactive and as plaintiff's decedent died approximately two months before the Superior Court decision, plaintiff's claim for wage loss is not viable.[4] Defendant alleges that the premium rates, approved by the Insurance Commissioner, were not calculated to include wage loss claims of deceased victims and that a retroactive application would be prejudicial and inequitable.

Pennsylvania applies the criteria set forth by the United States Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971) on the retroactivity of judicial decisions as follows:

"In our cases dealing with the non-retroactivity question, we have generally considered three separate factors. First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question . . . ' Finally, we have weighed the inequity imposed by retroactive application . . . " 404 U.S. at 106-07.

However, applying Chevron logic, the Superior Court in Daniels v. State Farm Mutual Ins. Co., 423 A. 2d 1284, 283 Pa. Superior Ct. 336 (1980), held that the Heffner decisions which gave work loss

---

4. In Parrish, supra, where this court granted summary judgment, the victim died after the Superior Court Heffner decision.

benefits to survivors was retroactive to the date of the No-fault Act's enactment as follows:

"Ordinarily a decision announcing a change in the law will be applied to cases pending on direct appeal. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (1965); Commonwealth v. Williams, 232 Pa.Superior Ct. 339, 331 A. 2d 875 (1974). *However, Heffner did not change the law; it rather decided an issue of statutory construction not previously decided by an appellate court.* Such an interpretation of legislative intent is regarded as part of a statute from the time the statute was enacted: Harry C. Erb, Inc. v. Schell Construction Co., Inc., 206 Pa.Superior Ct. 388, 213 A. 2d 383 (1965); Buradus v. General Cement Products, 356 Pa. 349, 52 A. 2d 205 (1947). Thus, our decision in Heffner did not create a new right to work loss benefits. That right existed all along. Contrary to appellee's suggestion, in Heffner we did not redefine survivor's loss; we simply analyzed the distinctions between work loss and survivor's loss, noting that in the case of a deceased victim the work loss claim is comparable to a survival action and the survivor's loss claim is comparable to a wrongful death action: 265 Pa.Superior Ct. at 181; 401 A. 2d at 1164-1165; See also, 491 Pa. 461, 421 A. 2d at 636. (Supreme Court slip op. at 13-15. . . . " 423 A. 2d at 1288 (Emphasis added.)

In Parrish, this court stated that "retroactivity does not protect a party from his own erroneous interpretation," and, as noted by Judge Wekselman in Harkins v. State Farm, supra, "insurers were free (on Nov. 28, 1977 after the first decision for defendant on the Heffner issue) to seek relief by way of declaratory action."

While defendant argues prejudice in calculating

insurance rates, the reverse side of the coin is that they have had use of the funds in a period of spiraling interest rates. In addition, under Section 106(c) of the Act, setting time limitations on stale claims, no-fault benefits accruing from a deceased victim must be commenced as follows:

"(2) If no-fault benefits have not been paid to the deceased victim or his survivor or survivors, an action for survivor's benefits may be commenced not later than one year after the death or four years after the accident from which death results, whichever is earlier. If survivor's benefits have been paid to any survivor, *an action for further survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits . . .*" (Emphasis added.)

In interpreting the jungle of the No-fault Act, our appellate courts have followed the North Star of the legislative intent "to establish a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. Supp. 1009102(b). It is our conclusion that defendant's argument on the non-retroactivity of the Heffner decisions is without merit.

## Reasonable Proof

Since plaintiff is entitled to the retroactive application of Heffner, the next issue is whether as a matter of law, plaintiff has submitted reasonable proof of work loss as required by § 106 of the act and that there are no disputed issues of fact.

Section 106(a)(2), 40 P.S. Supp. 1009.106(a)(2), states:

"No Fault benefits are overdue if not paid within

thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained."

In its answer to the complaint, defendant denied that reasonable proof of loss was submitted.

Plaintiff relies on the deposition of defendant's claim specialist, Louis Catalano, who testified that defendant had wage verification from the employer and a 1978 W2 form to prove that decedent was employed for approximately 29 years by the Commonwealth of Pennsylvania and that his rate of pay was $785.25 biweekly or approximately $20,000 per year.

The witness admitted familiarity with the processing of general No-fault claims and stated that he was able to construct an earning history from the materials submitted, and that plaintiff had submitted the necessary information by approximately the first week in April 1979.[5] Mr. Catalano further asserted that if wage verification provided by the Commonwealth had not been sufficient, defendant would have requested more information. No such request was made.

No counter-affidavits were filed by defendant to refute these statements.

Defendant's contention that the monthly amount due presents a question of fact is without merit. Section 106(a)(1) states that:

"No Fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained."

Since plaintiff's decedent was regularly

---

5. We have not been able to determine from the pleadings the precise date that plaintiff first claimed wage loss benefits.

employed, plaintiff began sustaining and accruing work loss from the date of the accident, February 29, 1979, at the rate of $785.25 biweekly, and within less than one year, the maximum amount of $15,000 would have accrued.

Defendant alternately contends that even if wage loss benefits are due and owing to plaintiff, survivors benefits in the amount of $5,000, which were paid in April 1979, should be set off and deducted.

This issue was considered by the Superior Court in both Heffner and Daniels, supra.

In Heffner, the court stated:

"Even assuming such potential for double recovery, this fact, in and of itself, does not necessarily evidence a legislative intention to deny 'work loss' benefits to survivors. . . . the mere possibility of a double recovery by granting 'work loss' benefits to survivors of deceased victims, does not seem contrary to either the express or implied intention of the legislature.

"However, we believe that in practice, recovery of survivor's loss and work loss benefits by survivors of deceased victims, will no more constitute double recovery under the Act than does recovery under analogous wrongful death and survival actions in tort law. [Citations omitted]" 421 A. 2d at 635.

As previously stated, plaintiff's decedent was killed February 29, 1979, and received a biweekly wage of $785.25. By the time the suit was filed in October 1980, lost wages had accrued beyond the $15,000 maximum allowed by the act and the argument of duplication of benefits would not be applicable.

Defendant's argument that the estate is not the proper entity to file for wage loss claims is also

without merit as the surviving spouse is also the executrix of the estate: Pontius v. U.S. Fidelity, No. 2702 S 1977, Dauphin County.

## Interest

In her complaint, plaintiff claims interest in the amount of 18 percent from October 1980, under Section 106(a)(2) of the act.

While plaintiff states in her brief that proof of loss was submitted to the carrier in March 1979, neither the pleadings nor the deposition establish a firm date for the *initial* request for wage loss payments.

In Hayes v. Erie Ins. Exchange, 493 Pa. 150, 425 A. 2d 419, 421 (1981), the Supreme Court ruled " . . . that where payment is overdue, as defined by Section 106, 18% interest is owed on that payment regardless of the 'good faith' of the insurer or the 'reasonable cause' of the delay."

As plaintiff's claim is limited to interest from October 1, 1980, interest will be awarded in accordance with plaintiff's pleadings.

## Attorney's Fees

Reasonable attorney fees, unlike 18 percent interest, are not automatically assessed if payment is overdue: Hayes, supra. Section 107(3) of the act states that the obligor must deny the claim "without reasonable foundation" and the fee amount is calculated "upon actual time expended." However, by October 1980, defendant had the benefit of the Heffner and Daniels decisions. As noted in Weaver & William v. Nationwide Ins. Co., (No. 387 of 1980, Opinion of Louik, J., February 4, 1982), the legislative intent of the No-fault Act is to discourage unnecessary litigation and encourage prompt disposition of No-fault claims.

Therefore, while we believe counsel fees are proper in this matter, such fees must be liquidated in accordance with Section 107 of the act.

Based upon the above discussion, it is the conclusion of the court that summary judgment is appropriate for the wage loss claim and interest in the amount of 18%, to be calculated from October 1, 1980.

An appropriate order is attached hereto.

## ORDER

And now, March 31, 1982, upon the motion of plaintiff Irene Y. Pisano, executrix of the Estate of Vincent Pisano, deceased, for summary judgment against State Farm Mutual Automobile Insurance Company to include claims for wage loss, interest and attorney's fees, pursuant to the attached opinion, said motion is granted to include (1) the wage loss claim in the amount of $15,000; (2) interest at 18 percent from October 1, 1980; and (3) reasonable attorney's fees in an amount to be liquidated. It is further ordered that judgment shall be entered in favor of plaintiff in the amount of $15,000, plus interest at 18 percent from October 1, 1980.