## Ferrante v. Allstate Insurance Co.

*John C. Marston*, for plaintiff.
*John J. Seehousen*, for defendant.

BROWN, *J.*, April 10, 1986—Plaintiff William Ferrante suffered a permanent injury to his left eye in an automobile accident on September 6, 1980. The lens of his left eye was surgically removed and replaced with a contact lens. According to his ophthalmologist, Ferrante has 20/20 vision in his left eye with the lens, but should have examinations periodically "to look for late appearing effects of his trauma."

His no-fault insurance policy from Allstate provides for the payment of medical expenses and lost wages. Ferrante demanded, but Allstate refused, to enter into an agreement assuming responsibility for any medical expense he might incur in the future as a result of the accident.

Ferrante filed a complaint in equity on October 20, 1983 seeking an order directing Allstate to agree

to be responsible for future medical expenses pursuant to the No-fault Motor Vehicle Act, 40 Pa.C.S. §§1009.404 and 405 (repealed, Febuary 12, 1984, P.L. 26, §8(s), effective October 1, 1984). Allstate filed preliminary objections in the nature of a demurrer on November 16, 1983. On November 14, 1985, we sustained the preliminary objections and dismissed the complaint.

Ferrante contends that periodic eye exams are rehabilitation under §§404 and 405 of the act. The pertinent part provides:

"§1009.404 - Court order; obligor responsibility

"(a) Court order. - After a hearing upon application by any interested person . . . and upon findings supported by evidence, a court of competent jurisdiction may enter an order determining that an obligor of basic-loss benefits applicable to an injury is responsible, subject to the limits and other terms and conditions of the coverage, for the cost of a *specified procedure or treatment for rehabilitation* to which the injured person has submitted or does thereafter submit" (Emphasis added.)

Section 405 provides coverage for rehabilitative occupational training. Medical and vocational rehabilitation services are defined by §103 of the act as "services necessary to reduce disability and to restore the physical . . . functioning of a victim. Such services may include . . . diagnostic and evaluation procedures. . . ."

The purpose of the No-fault Act is to compensate the victim of a motor vehicle accident for lost wages and to provide money for the treatment of the injury suffered for the period of time it takes to restore physical function. Allstate Ins. Co. v. Heffner, 491 Pa. 447, 421 A.2d 629 (1980). Once physical function has been restored, the object of the act is

accomplished and the rehabilitative process is finished.

This interpretation is supported by Dragun v. Volk, 500 Pa. 613, 459 A.2d 333 (1983). This is the only Pennsylvania case which offers a definition of rehabilitation under the No-fault Act. While Dragun defines rehabilitation for the purpose of clarifying the meaning of rehabilitation costs under §301, it is helpful in interpreting medical and vocational rehabilitation services. Dragun defines rehabilitation as connoting methods aimed at restoration of function following an injury or disability whose effects have been stabilized. It is more technically defined as the "restoration to a disabled individual of maximum independence commensurate with his limitations by developing his residual capacities," citing Blakiston's New Gould Medical Dictionary 1029 (2d ed. 1956).

In this case, Ferrante's sight in the injured eye has been restored. According to the ophthalmologist's report the contact lens corrected his vision to 20/20 in the left eye. Since the physical functioning of his eye is restored, the rehabilitative process has ended.

His concern is that his condition will deteriorate after the statute of limitations bars further claim and he will have nowhere to turn for payment of bills then incurred. Both §§404 and 405 provide that relief is subject to the limits and other terms of the coverage. Section 106(c) sets out the time limitations on actions to recover benefits. The pertinent part provides, "if no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits . . . may be commenced not later than two years after the last payment of benefits." After that, the insurance carrier is no longer responsible; the risk

that his condition may deteriorate is no longer on Allstate, and it cannot be compelled now to agree to pay past that limit.

The relief sought is not authorized by the No-fault Act; the complaint was properly dismissed.