David MACHER

v.

**COUNTY OF ALLEGHENY, Tom Foerster, in his official capacity as County Commissioner and Chairman, Pete Flaherty, in his official capacity as Commissioner, and Larry Dunn, in his official capacity as County Commissioner, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.

Decided April 23, 1996.

Ira Weiss, County Solicitor, for Appellants.

Joseph J. Pass, for Appellee.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The County of Allegheny and the County Commissioners in their official capacity (County) appeal the March 10, 1995 order of the Court of Common Pleas of Allegheny County (trial court) which granted a preliminary injunction sought by David Macher (Macher). Macher is a resident, taxpayer, and registered voter of the County and an employee of the County as a member of its fire force.

The following is the procedural and factual history giving rise to the appeal before us.

Factually, the County has a paid fire force. Some fire fighters in this force are stationed at the Allegheny County Airport at West Mifflin (West Mifflin) and some are stationed at the Pittsburgh International Airport (Pittsburgh International). Specifically, there are seven (7) fire fighters stationed at West Mifflin of which only two (2) are on duty during each shift.

Prior to December 20, 1994, West Mifflin had a Part 139 Index A full certification from the Federal Aviation Authority (FAA) which permitted West Mifflin to handle flights at the airport which included aircraft carrying more than thirty (30) persons. The County informed the FAA[1] that it was downsizing its fire force at West Mifflin to a Part 139 Index A limited certification which limits the airport use to aircraft carrying 29 or fewer passengers and does not require an on-site fire force. R.R. 130a.

As a result of the downsizing, the County, by its Fire Chief, sent a directive on March 2, 1995 to all fire fighters stationed at West Mifflin. The subject of this directive was "Deactivation of Fire Station at the Allegheny County Airport". The March 2, 1995 Memorandum from the Fire Chief to the fire fighters stated as follows:

> Due to the de-activation of the Allegheny County Airport Fire Station at West Mifflin, PA, as of March 1, 1995, at 0630 Hours.(sic) All Fire Fighters currently stationed at the Allegheny County Airport will be transferred to the Pittsburgh International Airport on your Regular Work Schedule as bid for 1995 on March 6, 1995 at 0630 Hours.

The County had made arrangements with West Mifflin Voluntary Fire Company No. 3 (Voluntary Company), which was offsite, to provide services at West Mifflin which theretofore had been provided by the County fire force. The Voluntary Company was not to receive any compensation from the County for so doing; furthermore, it was to use its own equipment since the fire force's equip-

ment was also being transferred to Pittsburgh International.

On March 6, 1995, Macher filed a Complaint in Mandamus for Injunctive Relief [sic] and a separate motion for a preliminary injunction. The trial court set a hearing date on the matter for March 10, 1995. On March 10, 1995, prior to the hearing, Macher filed an Amended Complaint being "Plaintiff's First Amended Complaint in Equity for Injunctive Relief". Macher specifically stated to the trial court that he was withdrawing his original Complaint in Mandamus.

Following argument on the foregoing facts which are not in dispute, the trial court entered an order, as herein relevant, as follows:

1. Defendants are to immediately re-assign a fire force of seven paid County firefighters to the County Airport at West Mifflin.

2. Said fire force may not be disbanded until a referendum in accordance with 53 P.S. §§ 751 and 751.1 has been held.

3. This injunction shall become effective upon the posting of bond, in the nominal amount of $1.00, by the Plaintiff in accordance with Pennsylvania Rules of Civil Procedure 1531(b).

4. The automatic supersedeas provided to the County under the Pennsylvania Rules of Appellate Procedure 173b(b) (sic) shall not apply in the event an appeal is taken by the County herefrom.[2]

On March 13, 1995, Macher filed the bond as required by the trial court's order. This appeal followed.

The County presents the issue of whether the fire force at West Mifflin has been "disbanded", as alleged by Macher, which would require the County to hold a referendum.

■ We initially note that we must apply the applicable rules of statutory construction for guidance in ascertaining and effectuating the legislative intent of a particular statute. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Unionville–Chadds Ford School District v. Rotteveel,* 87

---

1. No approval from the FAA was required for such change at West Mifflin.

2. Upon application of the County, the automatic supersedeas was reinstated by this court on April 27, 1995. Thus, this provision of the order is rendered moot.

Pa.Cmwlth. 334, 487 A.2d 109 (1985). Other than technical words and phrases, all of the words and phrases used in any legislation are to be construed according to their common meaning and accepted usage. 1 Pa.C.S. § 1903; *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), *appeal denied*, 522 Pa. 613, 563 A.2d 499 (1989).[3]

■ Additionally, the practical results of a peculiar interpretation may be considered and we must presume that the legislature did not intend a result which is absurd or unreasonable. 1 Pa.C.S. § 1922; *Lehigh Valley Co–Operative Farmers v. Bureau of Employment Security*, 498 Pa. 521, 447 A.2d 948 (1982).

■ The predicate of Macher's equity action is Section 1 and Section 1.1(a), Act of December 10, 1974, P.L. 802, *as amended*, 53 P.S. §§ 751 and 751.1(a).[4] Section 1 states, in pertinent part:

> No County ... which has paid employees on its fire force, including but not limited to fire apparatus operators, except by referendum, shall disband such fire force in favor of having such services performed by volunteers.

Section 1.1(a) provides, in relevant part:

> Whenever authorized by ordinance of the governing body, or upon petition of the registered voters of any municipality to the county board of electors of the county wherein the municipality is located, an election shall be held in the municipality upon the following question:
>
> Shall the (county, city, borough, town or township) of _____ disband the paid fire force in favor of having fire protection services performed by volunteers?
>
> .    .    .    .    .

53 P.S. § 751.1(a).

Macher argues that the fire fighters located at West Mifflin constituted a "fire force" separate from the fire force at Pittsburgh International within the meaning of the statute. The County asserts that a fire force consists of all personnel, wherever assigned, who are involved in bringing about the ultimate purpose of a fire force, i.e. combatting fires and other disasters at County facilities to minimize the danger and damage to persons and property which result therefrom. *See Hust v. Evansville*, 217 Ind. 147, 26 N.E.2d 387 (1940); *Board of Trustees of Firemen's Pension Fund of City of South Bend v. State ex rel. Hyatt*, 221 Ind. 110, 46 N.E.2d 595 (1941); *Cain v. Heckman*, 146 Ind.App. 167, 253 N.E.2d 297 (1969).

The resolution of this appeal turns on the meaning of the terms "disband" and "force" which are not legislatively defined. "Disband" is defined as "to break up the organization of; dissolve; to break up as an organization; disperse". Webster's Ninth New Collegiate Dictionary 359 (1989). Parenthetically, "de-activation" is defined as "to make inactive or ineffective". Webster's Ninth New Collegiate Dictionary 326 (1989). These terms are not synonymous; removing some members of the fire force from one County facility to another does not equate to dissolving the County fire force. "Force" is defined as "a body of persons or things available for a particular end". Webster's Ninth New Collegiate Dictionary 482 (1989).

The County has the authority to provide for a paid fire force to protect county property and persons from fires and other disasters which may occur at its facilities. In providing for a paid fire force, the County may station all members thereof at one location or facility or it may station some members of the force at two or more separate locations or facilities as the Commissioners, in their discretion, determine. The assignment of members of the fire force to separate facilities does not make those members a separate and distinct fire force; they, together with the rest of the members, continue to be a single fire force.

Our reading of Section 1 clearly demonstrates that the object of the Legislature's intent was to require a referendum prior to a paid fire force being replaced by unpaid vol-

---

**3.** Superseded by statute as stated in *Persik v. Nationwide Mutual Insurance Co.*, 382 Pa.Superior Ct. 29, 554 A.2d 930 (1989).

**4.** Section 1.1 was added by the Act of May 9, 1980, P.L. 116.

unteers when the entire fire force is disbanded, that is, dissolved, dispersed, or broken up. The Legislature in its use of the term "force" in Section 1 meant the total members of the fire force employed by the County and not any number less than the total number of members, even though a lesser number of members are stationed at separate County facilities.

Further, absurd or impractical results are presumed not to be the intent of a legislative statute. *Lehigh Valley Co–Operative Farmers.* An absurd result would prevail if a referendum was required for every transfer of members of the fire force from one County facility to another.

We conclude that the language of Section 1 only requires a referendum if the whole "force" is disbanded and replaced by volunteers. That clearly is not what occurred at West Mifflin. Hence, because the transfer of seven members of the fire force from West Mifflin to Pittsburgh International does not constitute a disbanding of the County fire force, no referendum is required.

Accordingly, the order of the trial court is reversed.[5]

### ORDER

AND NOW, this 23rd day of April, 1996, the March 10, 1995 order of the Court of Common Pleas of Allegheny County is reversed.

FRIEDMAN, J., did not participate in the decision in this case.

---

[5.] By reason of our determination herein, we do not address the other issues raised by the County.