455 A.2d 101

Ann SACHRITZ, Administratrix of the Estate of William
Sachritz, Deceased, Appellant,

v.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1982.

Decided Dec. 31, 1982.

Reargument Denied Feb. 16, 1983.

Richard Rosenzweig, Rosenzweig, Rosenzweig & Burton, Pittsburgh, for appellant.

John C. Carlin, Jr., Pittsburgh, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

In this case the Superior Court held appellant's claim for "post-mortem" work loss benefits was barred by the two year statute of limitations in Section 106(c)(1) of the No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176 §§ 101–701, 40 P.S. §§ 1009.101–1009.701 (Supp.1982). We granted review to consider the applicability of the limitations provisions of Sections 106(c)(1) and 106(c)(2) of the Act to the various types of no-fault benefits the legislature has provided in partial replacement of traditional tort damages for personal injury arising out of the operation of automobiles. Upon such review we have concluded that the legislature has provided comprehensive statutes of limitations in Sections 106(c)(1) and 106(c)(2), covering all no-fault benefits by drafting these sections on analogy to the statutes of limitations on traditional tort actions for personal injuries under our law, including survival actions and actions for wrongful death. Since appellant's claim for "post-mortem" work loss benefits is barred by Section 106(c)(1) of the Act, we affirm the Superior Court.

William Sachritz died on September 5, 1976, from injuries received in an automobile accident on August 16, 1976. His administratrix (Appellant) filed a claim under the provisions

of the No-fault Insurance Act with Pennsylvania National Mutual Casualty Insurance Company for no-fault benefits totaling $7,157.86, made up of a funeral expense allowance ($1,500.00), survivor's benefit ($5,000.00), work loss benefit ($553.86), and medical bills ($104.00). She received a payment for the full claim of seven thousand one hundred fifty-seven dollars and eighty-six cents ($7,157.86) on February 28, 1977. On April 12, 1979, the Superior Court filed its opinion in *Heffner v. Allstate Insurance Company,* 265 Pa. Superior Ct. 181, 401 A.2d 1160 (1979) and decedent's administratrix promptly filed a second claim for the "post-mortem" work loss benefits approved in *Heffner.* The payment of this second claim was refused by the insurance company and the present action was then filed on July 23, 1979.

The claim here is for the difference between the amount of work loss benefits claimed and paid on February 28, 1977, and the full amount of "post-mortem" benefits ($15,000.00) allowed to survivors of deceased victims under the judgment awarded by the Superior Court and affirmed by this Court in *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). The Allegheny County Court of Common Pleas granted appellee's motion for summary judgment and the Superior Court affirmed[1] that order dismissing appellant's claim on the ground that the claim is barred by Section 106(c)(1) of the No-fault Insurance Act.[2]

1. Appellant raises here, for the first time, the argument that appellee should be estopped from asserting the statute of limitations as a defense in this action because her insurance policy deceptively limited "work loss" benefits in a manner contrary to *Heffner*'s interpretation of the No-fault Insurance Act. The gist of equitable estoppel is misrepresentation of some kind which is relied on by another to his detriment. *Murphy v. Burke,* 454 Pa. 391, 311 A.2d 904 (1973); *Korpa v. Stuyvesant Life Insurance Company,* 236 Pa.Superior Ct. 581, 351 A.2d 682 (1975). The facts to support such a position were not pleaded in appellant's complaint and this argument has, therefore, been waived. Appellant also waives, by not raising it here, the related issue that she was unaware of her *Heffner* rights before that case came down. In any event this point was correctly decided against her by the Superior Court.

2. 40 P.S. § 1009.106(c)(1) provides:

In *Heffner,* we affirmed the Superior Court's holding that work loss benefits did not terminate on death of the injured party, pointing out that their continuation beyond death was analogous to the continuation of tort damages for economic loss to a decedent provided by our survival acts. We noted that "survivor's benefits" were analogous to the tort damages provided by our wrongful death acts for the economic loss suffered by the surviving members of decedent's family specified in those acts, as a result of his death from tortiously inflicted injuries. *Id.,* 491 Pa. at 460, 421 A.2d 629. This analogy is particularly striking in the context of the legislature's provision of the same one year statute which then prevailed for wrongful death in Section 106(c)(2) relating to no-fault survivor's benefits and the same two year statute prevailing for other no-fault benefits due the decedent, including work loss benefits, under Section 106(c)(1).

The work loss benefits allowed to survivors of deceased victims in the *Heffner* case have been labelled "post-mortem" benefits by the Superior Court in its opinion in this case, *Sachritz v. Pennsylvania National Mutual Casualty Insurance Company,* 293 Pa.Superior Ct. 483, 439 A.2d 678 (1981). We have adopted this designation in this opinion for convenience, but without any implication that they are an additional category of no-fault benefits created by the Court. Such "post-mortem" benefits are not survivor's benefits, designed to compensate certain designated persons for the damages they suffer as a result of the insured's death in a manner analogous to tort damages available under the wrongful death provisions of the acts of April 15, 1851 and

(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.

April 26, 1855,[3] governed in no-fault by the limitations of Section 106(c)(2), but simply continuing work loss benefits, designed to compensate the decedent's estate for the loss the insured himself suffered by having his earning power cut off by death, in a manner analogous to the survival acts,[4] and so governed in no-fault by the limitations of Section 106(c)(1). Consequently, appellant's argument that neither of the limitations on actions to recover benefits in section 106(c) of the No-fault Insurance Act applies to "post-mortem" benefits because these are neither "survivor's benefits," subject to Section 106(c)(2),[5] nor benefits arising "otherwise than from death," subject to Section 106(c)(1), must fail. While they are not survivor's benefits they do arise "otherwise than from death," specifically from the work loss resulting from the effects of the covered injury, for which benefits are not terminated by death under *Heffner*.

Arguing the legislature did not foresee the provision of work loss benefits to the injured insured beyond his death, appellant suggests that the statutory provisions have left the *Heffner* type of "post-mortem" work loss benefits outside the limitations of Section 106(c)(1). Following appellant's reasoning, Section 106(c)(2) would, also, not apply to *Heffner* type work loss benefits, if we consider "survivor's

3. Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601 and Act of April 26, 1855, P.L. 309, §§ 1 and 2, 12 P.S. §§ 1602 and 1603, both *repealed* April 28, 1978, P.L. 202, No. 53, § 2(a), *effective* June 27, 1978 (J.A.R.A.).

4. Now found in the Probate Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 P.S. §§ 3371–3373.

5. 40 P.S. § 1009.106(c)(2) provides:
(2) If no-fault benefits have not been paid to the deceased victim or his survivor or survivors, an action for survivor's benefits may be commenced not later than one year after the death or four years after the accident from which death results, whichever is earlier. If survivor's benefits have been paid to any survivor, an action for further survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits. If no-fault benefits have been paid for loss suffered by a victim before his death resulting from the injury, an action for survivor's benefits may be commenced not later than one year after the death or six years after the last payment of benefits whichever is earlier.

benefits" to include only those designed to compensate statutorily designated survivors for their economic loss and not the insured himself or his representative. Appellant, therefore, urges us to adopt the reasoning of the Superior Court in *Wright v. Allstate Insurance Company*, 271 Pa.Superior Ct. 559, 414 A.2d 395 (1979) and to apply the general six year statute limiting contract actions. Act of March 27, 1713, 1 Sm.L. 12, § 1, 12 P.S. § 31.

In *Wright* the Superior Court held that funeral expenses are not "survivor's benefits" within the meaning of Section 106(c)(2) of the No-fault Insurance Act on the basis of our opinion in *France's Estate*, 75 Pa. 220 (1874), allowing the claim of a deceased widow's executor to recover from decedent's executor funds expended for decedent's funeral expenses. *France's Estate* is grounded in the concept that the husband is primarily responsible for his and his wife's funeral expenses because of their status, and not in the wife's position as a "survivor" entitled to recover funeral expenses as a loss arising from his death. In *Wright*, the Superior Court did not address the wrongful death provisions of the Act of April 26, 1855 or the language in its own *Heffner* opinion noting that the persons entitled to recover wrongful death action damages, including the present value of services the victim would have rendered to his family if he had lived and his funeral expenses, "do not include the victim's estate generally, but [are] the 'husband, widow, children, or parents of the deceased, and no other relatives.' "[6] Having held that funeral expenses are neither "survivor's benefits" subject to Section 106(c)(2), nor benefits arising from loss "otherwise than from death", subject to Section 106(c)(1) within the meaning of the No-fault Insurance Act, the Superior Court in *Wright* concluded that neither the one year nor the two year limitation on actions in Section 106(c) was applicable to a claim for funeral expenses. The *Wright* court then proceeded to apply the general six year statute of limitations for actions on a contract without specialty found

6. *Heffner*, 265 Pa.Superior Ct. at 190, 401 A.2d at 1164 (quoting the 1855 act).

in the Act of March 27, 1713 on the theory that appellant's cause of action was derived from the insurance contract. The *Wright* court failed to consider either the nature of the benefits or the No-fault Insurance Act's purpose in substituting its benefits for those previously available in tort to the decedent's survivors under the wrongful death act or to his estate under the survival acts.

Such an analysis seems to us too narrow and smacks of the old formalism of common law analysis turning on the form of action. In 1895, Pennsylvania rejected this formalism with respect to limitations when the legislature provided that actions in trespass and trespass on the case would no longer be governed by different statutes of limitations tied to the form of action, but by differing periods of two or six years depending on whether the action sought damages for personal injury or property loss.[7] Since the benefits provided by our No-fault Insurance Act are clearly designed to reimburse injured parties for losses resulting from personal injury, we believe the more appropriately analogous general statute of limitations stems not from the old action in assumpsit, but from the actions in trespass and trespass on the case, involving injury to the person and the derivative statutes pertaining to survival actions and wrongful death.[8]

7. Act of June 24, 1895, P.L. 236, § 2 (superseding the Act of March 27, 1713, *supra*). Both statutes have been repealed by the Act of April 27, 1978, P.L. 202, No. 1978–53, *effective* June 27, 1978 (J.A. R.A.) and replaced by Section 5524 of the Judicial Code, Act of July 9, 1976; 42 Pa.C.S. § 5524, *effective* June 27, 1978, after appellant's cause of action arose. See discussion on p. 105.

8. Under the provisions of the wrongful death acts, appellant, as William Sachritz's widow, would have been entitled to recover in addition to other damages "the expenses incurred for medical and surgical care and for nursing the deceased, and such other expenses caused by the injury which resulted in death as could have been recovered in an action begun by the injured person in his lifetime; and . . . also . . . the reasonable funeral expenses of the deceased, if plaintiff has paid or incurred such expenses." 12 P.S. § 1604. Only if there were no widow, would decedent's personal representative have been "entitled to recover damages for reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of injuries causing death." 12 P.S. § 1602.

We do not find the reasoning in *Wright* persuasive, either as to the inapplicability of Section 106(c) or as to the choice of an alternative general statute of limitations. It is therefore overruled. Both the logic of Section 106(c) and its historical antecedents compel the following construction: 106(c)(2) covers no-fault benefits, including funeral expenses which, like wrongful death damages, are designed to compensate the insured's survivors for the loss they suffer by his death; 106(c)(1) covers other no-fault benefits designed to compensate the insured himself.

In our view, the history of statutory enactments relating to tort compensation for personal injuries, including those providing for wrongful death actions and for the survival of personal injury actions are indispensable to understanding the legislative intent which guided the drafting and enactment of the No-fault Insurance Act. As noted, the earliest statute addressing these subjects is found in the Act of March 27, 1713. That statute, as amended, provided a general two year statute of limitations for tort actions for personal injury.

In April of 1851 the legislature provided for the survival of personal injury actions based on negligence, authorizing the substitution of the decedent's personal representative as plaintiff, and established a widow's right to sue for a spouse's death "occasioned by unlawful violence or negligence." In the absence of a widow, the personal representative was similarly empowered to sue under the newly enacted provisions for wrongful death actions.[9] Act of April 15, 1851, §§ 18 and 19, 12 P.S. § 1601.

In all events these damages would have been actionable "within one year after the death, and not thereafter." 12 P.S. § 1603.

**9.** The various statutes authorizing the survival of personal actions and their maintenance by a decedent's personal representative were all repealed and replaced, first in the Fiduciaries Act of 1917, Act of June 7, 1917, P.L. 447, then by the Act of April 18, 1949, P.L. 512, §§ 601–603, 20 P.S. §§ 320.601–320.603, which was in turn replaced by the Probate Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 P.S. §§ 3371–3373.

In 1855, the legislature broadened the category of persons entitled to sue for wrongful death:[10]

> Section 1. The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives;  . . .  and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth.

Section 2 of that act, 12 P.S. § 1603, established a one year limitation for such wrongful death actions:

> Section 2. The declaration shall state who are the parties entitled in such action;  the action shall be brought within one year after the death, and not thereafter.

In 1895, as we have noted, the General Assembly reaffirmed this one year limitation on actions for wrongful death and explicitly provided a two year limitation on all personal injury actions.[11]  In 1927 the legislature expanded the damages recoverable in an action for wrongful death to include medical, surgical and nursing care, as well as funeral expenses, Act of May 13, 1927, P.L. 992, No. 480, § 1, 12 P.S. § 1604, but the one year limitation on such actions remained undisturbed until the enactment of the Judicial Code[12] in which a two year statute of limitations was provided for both personal injury actions and those for wrongful death.

In 1974, the General Assembly undertook in the No-fault Insurance Act "to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims."  In so doing,

10. Act of April 26, 1855, P.L. 309, § 1, 12 P.S. § 1602. Section 1 was amended in the Act of June 7, 1911, P.L. 678, § 1 to permit non-residents as well as residents to sue and in the Act of April 1, 1937, P.L. 196, § 1 to permit recovery by the personal representative when none of the specified relatives survive.

11. *See supra,* pp. 104 and 105.

12. Act of July 9, 1976, § 5524, 42 Pa.C.S. § 5524, *effective* June 27, 1978.

the legislature was clearly attempting to provide an alternative to the existing system of tort litigation without completely eliminating it for those cases of graver injuries and greater than normal economic burdens to victims and their survivors.[13] It is also quite clear, in spite of the insurance law phraseology, that the legislature, in addressing the question of what type of time limitation to apply to claims under this new No-fault Insurance Act, relied in Section 106(c) on the familiar limitations so long established in our statutes: two years for personal injury actions and one year for actions based on a wrongful death. Although the statute now speaks of "benefits . . . arising otherwise than from death" instead of "damages for personal injury" in Section 106(c)(1) and "survivor's benefits" instead of "damages for wrongful death" in Section 106(c)(2), these new provisions are clearly analogous to the old statutory provisions.

To recover a claim for personal injury brought under the survival acts then incorporated into the Probate Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, *effective* July 1, 1972, 20 P.S. §§ 3371–3373, appellant would, under the applicable limitations set forth in the Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34, have been afforded "two years from the time when the injury was done and not afterwards", i.e. until August 16, 1978. This reading of these acts as imposing a one year statute for wrongful death and a two year statute for survival actions has been sustained by our opinions in *Stegner v. Fenton,* 351 Pa. 292, 40 A.2d 473 (1945) and *Piacquadio v. Beaver Service Co.,* 355 Pa. 183, 49 A.2d 406 (1946). Our examination of the general law in effect in 1976 thus leads us to conclude that any claim appellant would have had for death benefits in tort would at the latest have expired on August 16, 1978.

Returning now to the provisions of Section 106(c) of the No-fault Insurance Act, we find that the second sentence in Section 106(c)(1): "If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same

13. *See* Act of July 19, 1974, P.L. 489, § 301, 40 P.S. § 1009.301.

or another claimant; may be commenced not later than two years after the last payment of benefits" has provided appellant in this case with an extension of time from the old period of two years after the injury was done to a period "not later than two years after the last payment of [no-fault] benefits," i.e. till February 29, 1979 instead of August 16, 1978.[14] We therefore conclude that the lower courts have properly applied the language of Section 106(c)(1) of the No-fault Insurance Act to this case. Under our holding today *Heffner* type benefits, as well as all other no-fault benefits receive the same treatment, with one exception. Initial claims for survivor's benefits under the No-fault Insurance Act are subject to *a one year* limitation under Section 106(c)(2) as were wrongful death damages when the legislature, analogizing to them, passed the No-fault Insurance Act. Work loss and other no-fault benefits belonging to the insured or a deceased insured's representative are subject to a two year statute.

This is said to be an anomaly. It is, however, an anomaly continued by the legislature in no-fault actions, when it failed to change the one year limitation in Section 106(c)(2) of the No-fault Insurance Act to two years at the time that the Judiciary Act Repealer Act (J.A.R.A.) repealed the differing one and two year limitations on actions for wrongful death and personal injury and replaced them with the uniform two year statute in Section 5524 of the Judicial Code. 42 Pa.C.S. § 5524. This remaining anomaly in the No-fault Insurance Act with respect to survivor's benefits and those payable to the representative of an insured who is instantly killed is subject to correction by the legislature. The judiciary would create a greater anomaly and ignore the purpose of the No-fault Insurance Act if it were to apply the six year contract statute to such benefits. No false analogy to contract actions is permissible in the face of the legislature's

**14.** A similar provision in Section 106(c)(2) where any survivor's benefits have been paid extends the statute of limitations for additional unpaid survivor's benefits to two years after the last payment.

comprehensive provision of shorter statutes drawn from the tort field for no-fault benefits.

Affirmed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

The Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.C.S.A. § 1009.102(a)(3), provides that "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivor's of all individuals killed in motor vehicle accidents ... is essential to the humane and purposeful functioning of commerce...." Given this salutary policy, all ambiguities must be resolved in favor of coverage for the insured. *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 458, 421 A.2d 629, 633 (1980). It is clear that an ambiguity exists in this case, as the majority reaches its result only by "analogy" to the correlative time limitation of wrongful death and survival actions created by prior legislative enactments. Accordingly, I dissent.