459 A.2d 1251

**Blanche M. GUITON**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 1982.

Filed April 22, 1983.

Petition for Allowance of Appeal Granted Sept. 8, 1983.

Charles A. Shaffer, Wilkes-Barre, for appellant.

Edward Pope Little, Montrose, for appellee.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

WICKERSHAM, Judge:

This case comes to us after our original decision in *Guiton v. Pennsylvania National Mutual Casualty Insurance Company*, 301 Pa.Super. 146, 447 A.2d 284 (1982) was reviewed by the Pennsylvania Supreme Court, 500 Pa. 179, 455 A.2d 108. Our supreme court directs us to reconsider the issue involved in this appeal in light of its recent decision in *Sachritz v. Pennsylvania National Mutual Insurance Company*, 500 Pa. 167, 455 A.2d 101 (1982). With the guidance provided by *Sachritz, supra*, we consider again the statute of limitations provisions contained in section 106(c) of the Pennsylvania No-fault Motor Vehicle Insurance Act.[1]

The facts of this case may be summarized as follows. On March 4, 1977, appellee's spouse, James W. Guiton, was killed in an automobile accident. At the time of the accident, James Guiton was covered by a no-fault insurance policy issued by appellant, Pennsylvania National Mutual Casualty Insurance Company. Following the accident, appellee, Blanche M. Guiton submitted a claim to appellant for no-fault benefits. On August 4, 1977, appellant paid Blanche Guiton $1,500.00 for funeral expenses, and $10.00 for ambulance expenses, and in October of 1977, appellant made a final payment to Blanche Guiton of $5,000.00 for survivor's loss benefits.

On November 26, 1979, Blanche Guiton instituted suit against appellant by filing a praecipe for writ of summons and, on January 7, 1980, she filed a complaint in assumpsit against appellant seeking work loss benefits under her deceased spouse's no-fault insurance policy. Appellant filed an answer and new matter to Blanche Guiton's complaint in which it raised the defense of the statute of limitations provisions contained in section 106(c)(2) of the No-fault Act. After the pleadings were closed, appellant filed a motion for judgment on the pleadings in which it again raised the defense of the statute of limitations. The lower court

1. Act of July 19, 1974, P.L. 489, No. 176, §§ 101 *et seq.*, 40 P.S. §§ 1009.101 *et seq.*

denied appellant's motion for judgment on the pleadings by order dated May 17, 1981, but certified the order for immediate appeal to our court in accordance with 42 Pa.C.S. § 702(b). Thereafter, appellant petitioned our court for permission to take an immediate appeal from the lower court's order in accordance with Pa.R.A.P. 1311, and we granted the petition by order dated July 9, 1981.

Section 106(c)(2) of the No-fault Act provides in pertinent part: "If survivor's benefits have been paid to any survivor, an action for further survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits." In the instant case, appellant made a final payment to Blanche Guiton of $5,000.00 for survivor's loss benefits in October of 1977, and Blanche Guiton commenced the instant action for work loss benefits on November 26, 1979—more than two years later.

The lower court found that the limitation contained in section 106(c)(2) on actions for further survivor's benefits applied only to actions for further survivor's loss benefits and did not apply to subsequent actions for work loss benefits. The lower court found no limitation in the No-fault Act on actions for work loss benefits applicable here and, consequently, held that the six year limitation period applicable to general contract actions governed this action for work loss benefits.[2]

The decision of the supreme court in *Sachritz, supra,* compels a different result. William Sachritz suffered injuries in an automobile accident on August 16, 1976 and died as a result of those injuries on September 5, 1976. His widow, Ann Sachritz, was paid funeral expense, survivor's benefit, medical expense and work loss benefits for the time between her husband's accident and his death; she received these payments on February 28, 1977. After we filed our opinion in *Heffner v. Allstate Insurance Company,* 265 Pa.Super. 181, 401 A.2d 1160 (1979), Ann Sachritz filed a

---

**2.** We agreed and affirmed in *Guiton v. Pennsylvania National Mutual Casualty Co.,* 301 Pa.Super. 146, 447 A.2d 284 (1982).

claim for the post-mortem work loss benefits approved in *Heffner*. Her claim was denied by the insurer and she filed suit against Allstate on July 23, 1979. We ruled that the suit was barred by the two year statute of limitations found in the second sentence of section 106(c)(1) of the No-fault Act.

The supreme court affirmed. The court noted that the work loss benefits paid after a victim's death are not survivor's benefits meant to compensate certain persons for the loss they suffer by the insured's death, but rather are "simply continuing work loss benefits, designed to compensate the decedent's estate for the loss the insured himself suffered by having his earning power cut off by death ...." *Sachritz, supra* 500 Pa. at 168–69, 455 A.2d 101. Because some work loss benefits had been paid on February 28, 1977, any action for further work loss benefits had to be filed within two years of that date in order to be timely.

In the case *sub judice* Blanche Guiton received a payment for funeral expenses and ambulance expenses in August 1977, and received survivor's loss benefits in October 1977. She now seeks post-mortem work loss benefits.

In *Sachritz* the court held " 'post-mortem' [work loss] benefits are ... governed in no-fault by the limitations of Section 106(c)(1)." 500 Pa. at 170–71, 455 A.2d at 101. Section 106(c)(1) states:

If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant[,] may be commenced not later than two years after the last payment of benefits.

Unquestionably neither the funeral expenses nor the survivor's loss benefits paid here arose otherwise than from death. There is, similarly, no allegation that the ten dollar "ambulance expense" arose otherwise than from death or was a medical expense as defined by the Act.[3] Moreover, the complete absence of any expenses for treatment, emergency room care or other obvious medical services indicates that the ambulance expense arose out of James Guiton's death. The relevant statute of limitations in this action is, therefore, found in the first sentence of section 106(c)(1).

In that sentence, it is provided that an action for benefits arising otherwise than from death "may be commenced not later than two years after *the victim suffers the loss. . . .* " (Emphasis added.) "Victim" is defined in the Act as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." "Injury" is defined as "accidentally sustained bodily harm to an individual and that individual's illness, disease or death resulting therefrom." "Loss," in the Act, means "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to allowable expense, work loss, replacement services loss, and survivor's loss." See 40 P.S. § 1009.103. In *Myers v. USAA*

3.  "Medical and vocational rehabilitation services" means services necessary to reduce disability and to restore the physical, psychological, social and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. A basic loss obligor is not obligated to provide basic loss benefits for allowable expense for medical and vocational rehabilitation services unless the facility in which or through which such services are provided has been accredited by the Department of Health, the equivalent governmental agency responsible for health programs, or the accrediting designee of such department or agency of the state in which such services are provided, as being in accordance with applicable requirements and regulations.
    40 P.S. § 1009.103.

*Casualty Insurance Company,* 298 Pa.Super. 366, 373, 444 A.2d 1217, 1221 (1982) we held:

It is clear by reading the language of section 106(c) that the legislature did not intend the limitations period to begin to run on the date of the injury as appellee suggests.

. . . .

Having decided that the limitations period is not triggered by the occurrence of the injury, the task remains to determine at what point the limitations period does begin to run.

. . . .

We believe that "loss" as that term is defined in the No-Fault Act must be equated with the common law concept of breach of contract because until such breach occurs, the claimant does not know that he has incurred any economic detriment. Moreover, until a breach has occurred, no cause of action based on contract exists and, as we concluded in *Bond* [*v. Gallen,* 292 Pa.Super. 207, 437 A.2d 7 (1981)], to hold that the limitations period begins to run prior to the existence of a cause of action would be unjust and unnecessary.

We also note that: "The recovery of work loss benefits by survivors of deceased victims best fulfills the legislature's express intention to provide 'compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents' . . . ." *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 460, 421 A.2d 629, 636 (1980).

Instantly, the victim, James W. Guiton, died before any request for no-fault benefits was made of his insurer. It was, therefore, not possible for James W. Guiton to have personally suffered the loss under the circumstances of this case. As section 106(c)(1) makes no reference to the applicable time limitations for commencing an action (if no-fault benefits have not been paid for loss arising otherwise than from death) when that action is commenced by survivors of the victim, one might assume that such an omission would indicate that survivors are not permitted to pursue such an

action, or that the applicable time limitations for such a suit are specified elsewhere; neither situation is the case, however, as those portions of the Pennsylvania Supreme Court opinions in *Allstate Insurance Company v. Heffner, supra,* and *Sachritz v. Pennsylvania National Mutual Casualty Insurance Company, supra,* quoted earlier in this opinion, indicate.

■■■ The survivors of James W. Guiton unquestionably do have the right to recover his work loss benefits in a timely commenced action (such timeliness to be determined under the standards set forth in section 106(c)(1)). Here, we must interpret the first sentence of section 106(c)(1) so as to permit the commencement of an action for post-mortem work loss benefits, when no-fault benefits have not previously been paid for loss arising otherwise than from death, not later than two years after the breach of the contract to pay a survivor of the deceased victim.[4] If we were to hold otherwise there would be no statute of limitations in section 106(c)(1) applicable to this case that would comport with the definition of terms presented in the No-fault Act and with the Pennsylvania Supreme Court's decisions as quoted herein. Based on the record before us, we cannot say when loss (breach of contract) occurred.

The order of the lower court denying appellant's motion for judgment on the pleadings is affirmed and the case is remanded for further proceedings consistent with this opinion.[5] We relinquish jurisdiction.

**4.** We note that in no event may an action for no-fault benefits arising otherwise than from death be commenced later than four years after the accident when no such benefits have been previously paid. 40 P.S. 1009.106(c)(1).

**5.** The lower court, in response to the insurance company's motion for judgment on the pleadings, held that the applicable statute of limitations was the six year limitation for contract actions; we now know that this is wrong under *Sachritz.* There may well be a valid statute of limitations defense to this claim; however, that will depend on the date that loss occurred and, based on the pleadings, neither the lower court nor we can say when that was. The parties may decide to develop this issue further after remand.