542 A.2d 154

**John D. DRISCOLL, Jr., Appellant,**

**v.**

**The TRAVELERS INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1987.

Filed June 1, 1988.

Domenic P. Sbrocchi, Bangor, for appellant.

Victor P. Stabile, Harrisburg, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, OLSZEWSKI, MONTEMURO, POPOVICH and JOHNSON, JJ., en banc.

ROWLEY, Judge:

This case involves a claim for work loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act ("No-fault Act"), 40 P.S. § 1009.101 *et seq.* (repealed 1984). The trial court ruled that the claim was time-barred, and granted summary judgment in favor of appellee, The Travelers Insurance Company. Appellant contends that the trial court erred in using a gross work loss calculation, rather than a net work loss calculation, in determining the date on which the statutorily mandated accrued work loss of $15,000 was achieved. Appellant also claims he is entitled to 18% interest on the denied benefits and an award of reasonable attorneys' fees. We affirm.

The facts are not in dispute. On August 16, 1980, appellant was injured while operating his employer's tractor-trailer in the scope of his employment as a truck driver. At the time, appellant's gross monthly salary was $2725.90. From August 17, 1980 until November 9, 1982, appellant was completely unable to work. However, appellant was compensated for a portion of his lost wages by his employer under the Pennsylvania Workmen's Compensation Act, 77 P.S. §§ 1–1603. In addition, on May 2, 1985, appellant was awarded social security disability benefits for the period of

August 16, 1980 to May, 1983, with the exception of a five-month waiting period.

At the time of the accident appellant did not own a car and was not otherwise insured under the No-fault Act. On April 11, 1984, he filed a claim for basic loss benefits with the Pennsylvania Assigned Claims Plan ("Plan"), 40 P.S. § 1009.204(a)(5). The Plan assigned appellant's claim to appellee, which denied the claim on the ground that it was time-barred. Appellant commenced this action on May 15, 1984 by writ of summons and filed a complaint on January 25, 1985. Appellee filed a motion for summary judgment contending that appellant's suit had been filed beyond the time allowed by the applicable statute of limitations. The trial court granted appellee's motion, and this appeal followed.

The statute of limitations on actions to recover benefits under the No-fault Act states, in pertinent part:

(c) Time limitations on actions to recover benefits.—

(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim *suffers the loss* and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

40 P.S. § 1009.106(c)(1) (emphasis added); *see Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 455 A.2d 101 (1982). Our Supreme Court has determined that the phrase, "suffers the loss," in the context of work loss benefits, does not refer to the occurrence of the accident, but to the date the victim suffers work loss. *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983). The Court in that decision noted that "work loss" is "economic detriment resulting from inability to work and earn a living, *e.g.*, loss of a paycheck. *Id.*, 503 Pa. at 540, 469 A.2d at 1384. The Court further stated that the No-fault Act contemplates a continuing series of losses as paychecks are missed throughout the period that the

victim is unable to work. *Id.* In support of its position, the Court cited § 1009.106(a)(1) of the No-fault Act: " 'No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as ... work loss ... is sustained.' " *Id.*, 503 Pa. at 540–41, 469 A.2d at 1384 (quoting 40 P.S. § 1009.106(a)(1)). Thus, in construing the statute of limitations for the No-fault Act, the Court concluded that:

where as here no-fault benefits have not been paid for loss arising otherwise than from death, and the work loss was known to have been caused by the accident, an action to recover work loss benefits under the Act may be commenced (a) within two years from any time the victim suffers work loss as a result of the accident, ... (b) within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for work loss, $15,000, 40 P.S. § 1009.202(b)(2) and (c) not later than four years after the accident.

503 Pa. at 541, 469 A.2d at 1384.

It is not disputed that appellant commenced his suit within four years of the accident. However, we must determine whether, for the purpose of § 1009.106(c)(1), appellant commenced the action within two years after his *accrued work loss* equaled $15,000, within the meaning of § 1009.106(a)(1). Because of the amounts involved in this case, we are called upon to decide whether the term "accrued work loss," is to be calculated by net income loss, e.g. gross income minus work loss received from other sources and tax benefits, or gross work loss.

To reiterate, appellant was injured on August 16, 1980, but did not commence this action until May 15, 1984. On the basis of foregone *gross* income of $2,725.90 per month, appellant's cause of action would have accrued by February 1, 1981. Stipulation of Facts at 6. Thus, the suit would have been time-barred as of February 1, 1983, pursuant to § 1009.106(a)(1), (b). Utilizing a *net* loss analysis, however, by subtracting workers' compensation, social security disability and tax benefits, appellant would not have reached the $15,000 threshold until the last week of May, 1984.

Consequently, appellant contends that the phrase "accrued the loss" refers to his net work loss, whereas appellee argues that "accrued work loss" refers to loss of gross income.

In determining whether a gross income or net income approach is mandated, we look to three sources. First, we examine the language of the No-fault Act. Section 1009.-106(c)(1), quoted above, does not specifically refer to the terms "work loss" or "net loss." It merely refers to "loss." However, "sections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute." *Commonwealth v. Revtai*, 516 Pa.Super. 53, 63, 532 A.2d 1, 5 (1987). In the definitions section of the No-fault Act, the term "loss" is defined as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and *limited to*, allowable expense, *work loss*, replacement services loss, and survivor's loss." 40 P.S. § 1009.103 (emphasis added). In the same section, "work loss" is defined as "loss of *gross income* of a victim, as calculated pursuant to the provisions of *section 205* of this act." *Id.* (emphasis added). Finally, section 205 states in relevant part:

§ 1009.205. Work Loss

(a) Regularly employed.—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his *probable annual income* by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

.     .     .     .     .

(d) Definitions.—As used in this section: "Probable annual income" means, absent a showing that it is or would be some other amount, the following:

(A) twelve times the monthly *gross income* earned by the victim from work in the month preceding the month in which the accident resulting in injury occurs ...

40 P.S. § 1009.205 (emphasis added). Thus, a straightforward reading of the No-fault Act leads to the incontrovertible conclusion that the legislature intended to equate "loss," and thus "work loss," with "gross income" for purposes of the statute of limitations. For this reason, we can find no justification for appellant's position that a net income calculation should be used.

Second, there exists support for the gross income approach from the Pennsylvania Supreme Court. In *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983), discussed above, the Pennsylvania Supreme Court was called upon, as here, to address the timeliness of an action to recover work loss benefits under the No-fault Act. In interpreting the term "loss," as used in § 106(c)(1), the Court applied the definitions of "loss" and "work loss" found in 40 P.S. § 1009.103. The Court found that "[t]he pertinent provision of the Act defines 'work loss', in the case of a victim who is not self-employed, as 'loss of gross income.'" *Id.*, 503 Pa. at 540, 469 A.2d at 1384. Thus, for us to hold that the statute of limitations should be calculated under a net income method, would be to directly contravene the Supreme Court's interpretation of the term "loss."

Third, we look to the panel decision of this Court in *Miller v. Prudential Property and Casualty Insurance Co.*, 344 Pa.Super. 28, 495 A.2d 973 (1985), *allocatur denied*, in which it was held that for purposes of the statute of limitations, the No-fault Act mandates usage of a gross income analysis.[1] While we recognize that the portion of the trial court's decision which is quoted in *Miller* contains flawed legal reasoning,[2] the holding is sound.

1.  We would note that this case followed the Supreme Court's decision in *Kamperis* by three years. The panel specifically refers to *Kamperis* in its decision. The Supreme Court had an opportunity to review *Miller,* but chose not to grant *allocatur.*

2.  The trial court incorrectly concluded that 40 P.S. § 1009.206 applies only to social security provisions.

We are faced, nevertheless, with a conflicting decision by a panel of this Court in *Augostine v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 338 Pa.Super. 15, 487 A.2d 828 (1984), *allocatur denied.* In that case, the victim of an accident sought no-fault benefits from his no-fault insurer. The trial court granted summary judgment in favor of the insurer on the ground that the victim's claim was filed more than two years after he had suffered the loss. This Court reversed, concluding that the victim's claim had been timely under the *Kamperis* rule. *Id.*, 338 Pa.Superior Ct. at 19, 487 A.2d at 830. Justice Roberts, writing for the panel, concluded that *"[e]xcusive of workers' compensation benefits he has received*, appellant's accumulated work loss reached the $15,000 statutory maximum on January 1, 1978. Under *Kamperis*, this date may be treated as the date on which appellant's work loss claim accrued." *Id.* (emphasis added). The panel in *Augostine*, without explanation or analysis, subtracted workers' compensation benefits in determining when the appellant's accrued work loss reached $15,000 for purposes of the statute of limitations under the No-fault Act. This was clearly error. Thus, to the extent that *Augostine* is in conflict with *Kamperis*, our decision today, and the unambiguous provisions of the No-fault Act, it is hereby overruled.

We have no doubt that there are compelling reasons why a net loss analysis might be preferable to a gross loss analysis in computing the time of limitation for bringing the action. The loss for which a victim seeks recovery, for example, is a net work loss, as computed pursuant to § 1009.206. However, such a modification is for the legislature to make. In construing any legislative enactment the primary objective of the court is to ascertain and effectuate the intention of the legislature. *Borysowski v. State Farm Mutual Automobile Insurance Co.*, 368 Pa.Super. 399, 534 A.2d 496 (1987); 1 Pa.C.S. § 1921(a). The intention of the legislature is that a gross loss analysis be applied in computing the time period, for statute of limitations purposes.

Summary judgment affirmed.

BROSKY, J., files a dissenting opinion.

MONTEMURO, J., files a dissenting opinion in which CIRILLO, President Judge, and McEWEN, J., join.

BROSKY, Judge, dissenting:

I respectfully dissent from the majority's view. We are called upon, according to the majority, to decide whether accrued work loss is to be calculated by net income loss or gross income loss for purposes of determining the period of limitation.

The majority states "we must determine whether, for the purpose of § 1009.106(c)(1) [the limitations section], appellant commenced the action within two years after his *accrued work loss* equaled [sic] $15,000, within the meaning of § 1009.106(a)(1)." It is very important to note that nowhere in the limitations section of the No-fault Act is there language allowing for the bringing of an action within two years after the victim's accrued work loss equals $15,-000. This particular approach to addressing the timeliness of the action was born of judicial construction by our Supreme Court in *Kamperis v. Nationwide Insurance Co.,* 503 Pa. 536, 469 A.2d 1382 (1983). The *Kamperis* Rule, as it has been called, was created when the court considered the two separate limitations periods under the Act—two years from loss and four years from date of accident—in connection with the $15,000 work loss limitation of the Act, and also in connection with the fact that work loss is construed as a continuing series of losses, one occuring each and every time a victim misses a periodic paycheck. For the reasons that follow, I believe that to the extent the limitations section of the Act is going to be construed to allow an action to be commenced within two years of accrual of $15,000 in work loss, the $15,000 figure must be calculated to be consistent with recoverable work loss benefits.

From a logical standpoint, the *Kamperis* rule would have to be thought of as either a modification of either or both of the limitations provisions of the Act, or an interpretation of

the date a victim "suffers the loss", perhaps this itself being a modification of sorts, as the critical point in starting the two-year limitation provision. The majority's position, too, would have to be considered as such if it is given that pre-*Kamperis* the period began running on the first lost paycheck. Although not posed by the majority, the *Kamperis* rule could be construed to possibly shorten the outer limitation of four years by mandating that the suit be brought within two years of accruing a $15,000 work loss. Yet no decisions of our appellate courts have construed the *Kamperis* case in this fashion. Instead, all the decisions, as does the majority's today, appear to recognize the rule as allowing a victim more than two years from the first lost paycheck to file an action without prejudice. In essence the start of the two year period is delayed until the victim hits a work loss total of $15,000. In this respect, we must conclude that the limitations section was being construed in *Kamperis* in a pro-victim fashion. Although it is not clear in *Kamperis* whether the court contemplated the $15,000 work loss figure be computed based upon gross work loss or compensable loss under the Act, I believe logic and policy require a holding that compensable loss controls.

If the *Kamperis* rule is construed as defining the date of loss in work loss cases as the date when the compensable maximum is reached, and further loss will not be compensable under the Act, many positive things could result. The victim would be granted the customary two year period to bring an action but that period would begin at the time his claim matures and his entitlement is cognizable. This prevents the victim from being put in a position where he has to negotiate or take other steps to collect his entitlement during a time when that entitlement is continually changing and still uncertain due to the continuing series of losses. It would also appear to prevent an artificial limitation on recovery resulting from the fact that an individual might suffer an ultimate net work loss of $15,000, but not within any two year period due to receiving other off-setting

benefits.[1]

As has become apparent, the Act is quite capable of confusing both lay people and the legal profession as to the accruing of benefits and rights under the Act, especially when the victim is receiving collateral benefits from other sources. Undoubtedly, if the two year period is started on the date of the first lost paycheck, the victim's claim will remain in a state of flux and uncertainty for much of the two year period, hampering effective assessment of the claim and recovery efforts as well. However, by preserving the four year limitation, the insurer is not unduly prejudiced by delinquent actions.

In contrast, if the *Kamperis* rule is computed on a strictly gross loss analysis, irrespective of compensable work loss, the rule would very often promote no logical end or goal. The present case illustrates the relative incongruity of using strictly a gross loss analysis. Appellant would have reached the $15,000 gross loss limit prior to missing six months of work. Yet due to receiving workmen's comp benefits his entitlement under the Act would be substantially below that figure. Upon reaching $15,000 in gross loss, it would be extremely difficult to predict what appellant's eventual entitlement would be.

Indeed, under the gross loss approach, it is possible that appellant's entitlement would not be knowable until just prior to the period running or even possibly after the period ran. Would there be any logic in allowing appellant an additional six months to bring an action for work loss benefits under such circumstances? Would appellant really

1. This could occur because the two year limitation has been construed to limit recovery to recoverable losses occurring within the preceding two year period rather than mandating the bringing of an action within two years of the first loss. See *Murphy v. Prudential Property & Casualty Insurance Co.,* 503 Pa. 528, 469 A.2d 1378 (1983) and *Miller v. Prudential Property & Casualty Insurance Co.,* 344 Pa.Super. 28, 495 A.2d 973 (1985). Consequently, if one waited until suffering $15,000 in net loss of earnings, and this figure was out reached within two years of the first loss, then recovery would be limited to the net loss suffered in the two years preceding the bringing of the action. See *Miller.*

be any better off than if the two year limitation had begun running on the first missed paycheck? Under such circumstances the gross loss analysis would result in a rather arbitrary extension of six months yet would neither benefit the victim nor the insurer to any noticeable extent. Contrast appellant's situation with that of an individual who was earning only $750 per month in gross wages and missed work due to an accident. If this individual were receiving no other benefits which would adjust his compensation under the Act, his gross work loss would coincide with his entitlement under the Act. It would then take 20 months for him to reach $15,000 in gross wage loss and under the majority's interpretation, he would be extended another 24 months to bring an action. Why should this hypothetical individual be treated differently than appellant simply because, by fortuity, his gross loss is not as great as appellant's and is the same as his entitlement under the Act? Further, to the extent this hypothetical individual is given a full two years from the date in which his entitlement would have reached the statutory maximum of $15,-000, why should appellant not be afforded the same courtesy or benefit?

The majority's position is flawed, I believe, by its insistence upon construing *Kamperis* by inserting Act definitions. The majority examines the Supreme Court's statement that an action may be commenced "within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for work loss, $15,000 ..." The majority then concludes that the legislature equated the terms "loss", "work loss" and "gross income" in drafting the No-fault Act and interjects that perceived meaning of the term "accrued work loss" into the Supreme Court's statement or interpretation of when an action may be commenced. This may be a logical step if the $15,000 accrued work loss provision was, itself, set forth in the Act. However, it was not, but was instead set forth in *Kamperis*. The Supreme Court does not indicate with any specificity that this $15,000 figure should be computed on a gross

loss basis, nor do they indicate that accrued work loss should be defined according to terms in the Act.

Consequently, it does not necessarily follow that an isolated definition in the Act should control the judicial construction of the starting date for limitations purposes as set forth in *Kamperis*. It is equally appealing, in my opinion, that for purposes of limitations periods, the Court was choosing to treat the "continuing series of losses" as one loss in a state of flux maturing at the time of the "last loss". Further, when the Court states "within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for loss, ..." the court could just as well have been focusing on the point where one reaches maximum entitlement under the Act.

As this case shows, one could reach a point of loss of gross wages of $15,000 without being anywhere close to reaching the "maximum amount recoverable under the Act." Construed in this fashion, reaching the point of maximum entitlement, a recoverable work loss of $15,000, would always be a relevant event. However, as this case demonstrates, reaching $15,000 in gross lost wages could be totally irrelevant to entitlement under the Act, provide little predictive value as to eventual entitlement, as well as provide for very arbitrary limitations periods. Although, as the majority points out, the Supreme Court does refer to Act definitions earlier in the *Kamperis* opinion, they then embark upon a discussion of the broad remedial purpose of the Act in an apparent attempt to reconcile the limitations period of the Act with the fact that one suffers a continuing series of losses. 469 A.2d at 1384. Then, recognizing the limits upon recovery for work loss, the Court sets forth the limitations provision under discussion here. Inasmuch as the Court was apparently attempting to effectuate the broad remedial purposes of the Act, it does not follow that they would wish the narrowest possible construction of the so-called *Kamperis* rule, which is what the majority has propounded here.

In short, I believe a careful analysis of the *Kamperis* rule will reveal that applying a gross income loss analysis in every case would result in arbitrary extensions of the two-year period for filing an action while not necessarily advancing any recognizable goal or purpose. Secondly, I believe that, while upon a first reading the attempt to construe such terms as "accrued work loss" according to the definitions in the Act sounds logical, a closer reading will indicate this is not necessarily so when the accrued work loss of $15,000 rule is born of judicial construction and not set forth in the Act itself, and where this rule was born in the spirit of construing the Act to further broad remedial purposes. Thirdly, it is apparent that this issue was not present in the *Kamperis* case as Mr. Kamperis was killed in the accident which brought rise to that case, and, as such, there was not a situation where an individual was receiving periodic workmen's compensation benefits.

In contrast, if the $15,000 accrued work loss is construed as the point where one's entitlement under the Act "equals the maximum amount recoverable under the Act for work loss, $15,000 ...", then that point in time would always be relevant as the point where one's entitlement has been exhausted and the claim against the insured fully matured. The insurer's interest in timely claims would be protected by either the two year limitation from maturation of the claim or the four year limitation from date of accident. This construction would also serve the goal of allowing the claimant the customary two years to negotiate a settlement or take other steps necessary to recover his claim *after* the full extent of his claim is known while making sure the claimant is fully compensated for allowable work loss benefits to the extent of the Acts' $15,000 limitation.

Lastly, I believe we should not be too quick to disregard and overrule the decision in *Augostine v. Pennsylvania National Mutual Casualty Insurance Co.*, 338 Pa.Super. 15, 487 A.2d 828 (1984). At this point I hope I have demonstrated that the key issue before us today is not how the term accrued work loss would be construed under

definitions in the Act, but what was within the Supreme Court's contemplation when it construed the limitation provision of the Act to allow commencement of a suit "within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for work loss, $15,000 . . ." As such, the Supreme Court's understanding is the controlling factor in the case before us.

It should not escape notice that *Augostine* was authored by Justice Roberts, sitting specially on the Superior Court, who participated in the *Kamperis* decision as Chief Justice of our Supreme Court. Justice Roberts indicates in *Augostine* that application of the *Kamperis* rule requires exclusion of workmen's compensation benefits. Having participated in the development of the *Kamperis* rule, I would defer now, as I did in *Augostine*, to Justice Robert's understanding of the proper application of that rule. For the above stated reasons, I dissent.

MONTEMURO, Judge, dissenting:

I cannot agree with the majority's holding that a gross loss calculation, rather than a net loss calculation, should be employed in determining the date on which the accrued work loss reached the $15,000 maximum. Contrary to the majority's assertion, I believe that the legislature's intent, which can be gleaned from construing the provisions of the No-fault Act in *pari materia*, was that a net loss analysis be utilized in calculating the date on which the $15,000 mark is reached. I therefore respectfully dissent.

I believe that the primary flaw in the majority's analysis is that it approaches the problem with blinders. Instead of looking at the entire No-fault Act, the policies behind the act, and the interrelationship of the various provisions, the majority improperly focuses its attention on the definition of "work loss" contained in 40 P.S. § 1009.103. Our primary goal in construing any statutory provision is to ascertain and effectuate the intent of the legislature. 1 Pa.C. S.A. § 1921(a). In ascertaining legislative intent we must consider the entire statute and avoid according an individual

provision an interpretation which does not take into account related sections of the same statute. *Id.; Causer v. Mandarino,* 338 Pa.Super. 564, 488 A.2d 36 (1985).

In any action under the No-fault Act it is important to recognize that what the claimant is claiming and what the insurer is required to provide is "basic loss benefits." 40 P.S. §§ 1009.102(b), 1009.104. Section 201 of the No-fault Act entitles any "victim"[1] of an accident or survivor of a deceased victim to recover "basic loss benefits" in accordance with the provisions of the Act. 40 P.S. § 1009.201; *McGilley v. Chubb and Son, Inc.,* 369 Pa.Super. 547, 535 A.2d 1070 (1987). One of the provisions with which the claimant must comply is the time limitations requirements contained in Section 106(c)(1). That section provides in pertinent part:

(c) Time limitations on actions to recover benefits.—

(1) If *no-fault benefits* have not been paid for loss arising otherwise than from death, *an action therefor* may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

40 P.S. § 1009.106(c)(1) (emphasis added). This portion of Section 106(c)(1) requires claimants to file their initial claim for "no-fault benefits" within two years from the date of "loss". *Sachritz v. Pennsylvania National Mutual Casualty Insurance Company,* 500 Pa. 167, 455 A.2d 101 (1982); *Borysowski v. State Farm Mutual Automobile Insurance Co.,* 368 Pa.Super. 399, 403, 534 A.2d 496, 498 (1987). The term "no-fault benefits" is defined in Section 103 of the act as "basic loss benefits, added loss benefits, or both."[2] 40

---

1. Victim is defined as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.103.

2. It is clear that appellant in this case is seeking compensation for basic loss benefits from the assigned claims carrier. As a result the term "no fault benefits" is synonymous with the term "basic loss benefits" in the instant matter.

P.S. § 1009.103. Basic loss benefits are further defined by Section 103 as follows:

'Basic loss benefits' means benefits provided in accordance with this act *for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or terms and conditions provided or authorized in accordance with this act.* Basic loss benefits do not include benefits for damage to property. Nor do basic loss benefits include benefits for net loss sustained by an operator or passenger of a motorcycle.

40 P.S. § 1009.103 (emphasis added).

Reading the limitations provision of Section 106(c)(1) in conjunction with the definition of "basic loss benefits" leads to the inescapable conclusion that an action for basic loss benefits, which are to be computed by a net loss analysis, may be commenced not later than two years after the victim "suffers the loss...." The question still remains as to when the victim "suffers the loss" for purposes of determining the date on which the two year limitations provision of Section 106(c) begins to run. This question was answered by our supreme court in *Kamperis v. Nationwide Mutual Insurance Company,* 503 Pa. 536, 469 A.2d 1382 (1983). In *Kamperis,* the court construed the term "suffers the loss" in the context of a claimant seeking basic loss benefits for work loss sustained. In formulating the test to determine whether an action seeking basic loss benefits for work loss is timely, the court read the limitations provision in Section 106(c)(1) in conjunction with Section 202(b). Section 202(b) provides, in pertinent part, "Work loss, as defined in section 103 shall be provided ... (2) up to a total amount of fifteen thousand dollars ($15,000)." 40 P.S. § 1009.-202(b)(2). *Kamperis, supra* at 541, 469 A.2d at 1384. Reading this section as a qualification on the general limitations provision provided in Section 106(c)(1), the court set forth a three part test for determining whether a timely action for work loss benefits had been commenced. The court opined:

Thus, the period of limitations provided in § 106(c)(1) must be construed to mean that, where as here no-fault benefits have not been paid for loss arising otherwise than from death, and the work loss was known to be caused by the accident, an action to recover work loss benefits under the Act may be commenced (a) within two years after the victim suffers the loss as a result of the accident; (b) *within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for work loss, $15,000,* and (c) not later than four years after the accident.

*Kamperis, supra,* 503 Pa. at 541, 469 A.2d at 1384 (emphasis added) (citations omitted).

I believe that the majority misconstrues *Kamperis* as mandating a gross loss method of computation of the $15,-000 maximum under the second prong of the test. A careful reading of *Kamperis* reveals that the court spoke in terms of equating the date on which the victim suffered the work loss with the date on which he missed his next expected paycheck only with reference to the first prong of the test. Thus, the court's reference to the definition of work loss as "loss of gross income ..." was merely meant to convey that for purposes of determining when an individual sustains economic detriment, e.g., loss of paycheck, and for purposes of initially computing the "continuing series of losses" (of paychecks) under the first prong, a gross method of computation is appropriate. *See* 40 P.S. § 1009.205. The question presented in this case, not specifically addressed by *Kamperis,* is the proper method of calculating under the second prong of the test whether the $15,000 maximum amount recoverable for work loss has been reached. The answer to this question can be inferred from the language used in the second prong of the test, the only place where the court factored into its analysis the $15,000 limit on work loss contained in section 202(b)(2). I believe that the court's reference to the point where work loss equals "the maximum amount *recoverable* under the Act ..." implies that a net loss method of computation be used

in determining when the $15,000 maximum has been reached.

In computing the amount that a victim can recover under the Act, Section 206 provides as follows:

§ 1009.206. Net loss

(a) General—Except as provided in section 108(a)(3) of this act, [Section 1009.108 of this title] all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act [42 U.S.C.A. § 1396 *et seq.*] and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

(b) Tax deduction—If a benefit or advantage received to compensate for loss of income because of injury, whether from no-fault benefits or from any source of benefits or advantages subtracted under subsection (a) of this section, is not taxable income, the income tax saving that is attributable to such loss of income because of injury is subtracted in calculating net loss for work loss. Subtraction may not exceed twenty per cent (20%) of the loss of income and shall be in such lesser amount as the insurer reasonably determines is appropriate based on a lower value of the income tax advantage.

40 P.S. § 1009.206.

Section 206 clearly contemplates that Workmen's Compensation benefits be deducted from gross work loss in determining basic loss benefits recoverable under the Act. In *Motley v. State Farm Mutual Insurance Company*, 502

Pa. 335, 466 A.2d 609 (1983), our supreme court was presented with an opportunity to construe Section 206 in conjunction with the $15,000 maximum work loss requirement of Section 202(b)(2). In *Motley,* the insured was injured in an accident in the course of his employment. His total combined weekly income at the time of the accident was $282.96 per week. Following the accident the insured received $163.84 a week in Workmen's Compensation benefits. The court first noted that Section 206(a) of the No-fault Act mandated that Workmen's Compensation benefits be subtracted from gross work loss. *Id.* at 339, 466 A.2d 611. Reading this section with reference to the $15,000 limit on work loss contained in Section 202(b), the court stated:

> We hold that where an injured claimant is receiving Workmen's Compensation benefits, excess no-fault benefits are to be computed by deducting the Workmen's Compensation benefits from the insured's *actual* wage, the difference being the benefits to which he is entitled. Section 1009.202(b) of the No-fault Act *limits the amount of work loss benefits which the insurance company will be required to pay.*

*Id.* (emphasis added) (footnote omitted).

Again, it must be emphasized that what the insurance company insures against and what is compensable under the Act is "basic loss benefits" for work loss sustained. While work loss is initially computed by a gross computation method under Section 205, basic loss benefits for work loss sustained, which is what the insurer will be required to pay, is calculated on a net loss basis under Section 206 by offsetting certain enumerated benefits from the insured's actual or gross wages. The court in *Motley* implicitly recognized that a net analysis is the proper method by which to calculate the $15,000 maximum in its statement that Section 202(b) places a $15,000 limit on the amount that the insurer will be required to pay under the Act. Consequently, I believe that the second prong of the *Kamperis* test, that is, the calculation of the date on which the victim's

accrued work loss equals the $15,000 maximum amount recoverable under the Act, contemplates calculation by the net loss formula contained in Section 206.

I would therefore hold that for purposes of determining the date on which the $15,000 maximum for work loss has been reached, a net computation method is appropriate. Unlike the majority's analysis, which narrowly focuses on the definition of work loss, this interpretation gives effect to all of the provisions of the No-fault Act as well as to supreme court precedent. In addition, the net loss calculation method would promote judicial economy as well as the broad remedial purposes behind the No-fault Act. Because an individual may only recover basic loss benefits, which are computed by offsetting certain benefits to which he is entitled, it may often turn out that after offsetting these benefits the victim is entitled to nothing under the Act. The majority's gross computation method would require the victim, in an effort to toll the limitations period, to institute an action as soon as his gross work loss approached the $15,000 limit, even though the subsequent court proceeding would merely determine that the victim sustained no compensable loss under the Act because the benefits received completely offset actual work loss. The net computation method would provide a victim with the opportunity to evaluate whether or not he will be entitled to benefits under the Act without necessitating the commencement of a lawsuit, with its attendant expense, in an attempt to preserve a right which may ultimately prove to be nonexistent. Additionally, the courts of this Commonwealth have consistently stated that in close or doubtful cases, provisions of the No-fault Act should be construed in favor of extending coverage. *See Allstate v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980). Because the net computation method provides a longer time period before the $15,000 maximum is reached and the right to compensation is extinguished, I believe that it is also consistent with the broad remedial purposes behind the No-fault Act.

Accordingly, I would find that Workmen's Compensation and Social Security benefits should have been offset from appellant's actual work loss in calculating the date on which the $15,000 limit was reached, and that his action for excess no-fault benefits was timely filed. In so doing, I would expressly overrule *Miller v. Prudential Property and Casualty Company*, 344 Pa.Super. 28, 495 A.2d 973 (1985), and would endorse the analysis set forth in *Augostine v. Pennsylvania Mutual Casualty Insurance Company*, 338 Pa. Super. 15, 487 A.2d 828 (1984).

CIRILLO, President Judge, and McEWEN, J., join.